King Street Realty Company v. Commissioner.
King St. Realty Co. v. Commissioner
Docket No. 4602.
United States Tax Court
1945 Tax Ct. Memo LEXIS 62; 4 T.C.M. (CCH) 945; T.C.M. (RIA) 45315; October 11, 1945
*62 Emily Marx, for the petitioner. W. F. Evans, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of $572.49 for 1939 and one of $694.90 for 1940. The issues for decision are whether the Commissioner erred (1) in disallowing a deduction of $1,500 for each year representing payments made in each year to Virginia Wise Marx for services rendered by her in connection with the purchase in a prior year of the real estate which the petitioner thereafter owned and leased; and (2) in disallowing a deduction of $3,179.44 of a larger deduction claimed for depreciation and obsolescence in each year upon the store building located on the property owned by the petitioner. Findings of Fact The petitioner is a corporation which filed its returns for the years in question with the collector of internal revenue for the third district of New York. They were filed on an accrual basis. All of the stock of the petitioner was held by a trust of which Leonard Marx, his sister, and his mother were the beneficiaries. Leonard, his wife, and his sister were the officers of the petitioner. The petitioner was organized *63 on May 24, 1934 to hold property at 509 King Street, Wilmington, Delaware, then being acquired. Marx, a real estate dealer, negotiated a contract for the purchase of two pieces of real estate in Wilmington, Delaware. His wife assisted him in closing this contract and in obtaining deeds for the two properties. She had had some experience in psychology but none in dealing in real estate, except from discussions with her husband. The deeds were dated June 22, 1934. The agreed price of the two properties was $267,500. Title to one of these properties was taken in the name of the Majestic Realty Company and was sold shortly thereafter for $262,500. The petitioner took title to the other property. $28.000 of the total purchase price was considered to be the cost of the property at 509 King Street, taken by the petitioner. The property thus acquired by the petitioner was improved with a three-story brick building which was then occupied by the F. W. Woolworth Company under a lease and used as a retail store. The lease to Woolworth was to expire on March 25, 1942. Marx agreed with his wife that she should receive for her services in the acquisition of the two properties, $1,500 a year *64 during the remaining life of the Woolworth lease on the property at 509 King Street, provided the petitioner continued to own that property. The petitioner made those payments through the years here in question and claimed deductions for those payments as officer's salaries on its returns. The Commissioner disallowed the deductions. No part of the compensation for the services of Virginia was allocated to that portion of the realty acquired by the Majestic Realty Company. The services of Virginia, as an officer of the petitioner during the years 1939 and 1940, were nominal only and none of the amount here in controversy represents compensation for any services performed by her during those years. The petitioner and Woolworth entered into a new 40-year lease of the King Street property on July 28, 1939 to begin on March 25, 1942. The lessee under this new lease was given the right, during the unexpired term of the old lease and during the term of the new lease, to demolish buildings on the premises and to erect a new building or buildings thereon at its own expense. Any building on the premises at the termination of the new lease was to be a part of the real estate and not subject *65 to removal by the lessee. The tenant, pursuant to the new lease, demolished the old building in 1941 and erected thereon a new brick building of approximately the same size. The building on the property at 509 King Street was set up on the books of the petitioner at a cost of $13,400. The unrecovered cost of the buildings as of January 1, 1939 was $10,854.68. The petitioner, in its returns for 1939 and 1940, claimed deductions for depreciation and obsolescence on the building of $3,537.46 upon the theory that the end of the useful life of the building would be January 25, 1942. The Commissioner, for each of the years in question, has allowed a deduction for depreciation on this building of $358.02 and has disallowed the additional amount of $3,179.44 claimed by the petitioner on its returns. Opinion MURDOCK, Judge: The petitioner claims the right to deduct $1,500 in each year representing payments made to Virginia Marx for assistance which she gave in the acquisition of two pieces of property. Deductions can be taken only where Congress has specifically provided for them. The petitioner has failed to call attention to any provision of the Internal Revenue Code in connection with *66 this claim or any authority supporting it. There is no provision under which the amount is deductible. No part of it is an ordinary and necessary expense in carrying on the business of the petitioner. Amounts paid in the acquisition of property are a part of the cost of the property and are not deductible as expenses. Cf. , affirmed (certiorari denied, ); ; ; ; . If any part of the amount here in question was properly paid by this petitioner, it was paid in connection with the acquisition of its principal asset, the only piece of real estate which it ever owned. Furthermore, any services which Virginia rendered were rendered, not in the acquisition of the petitioner's property alone, but also in the acquisition of another property which was apparently many times more valuable and was acquired by a wholly different corporation. Just why the petitioner should pay all of the commission *67 or compensation for her services is not shown. Certainly, it has not been shown why it would be proper for the petitioner to pay her approximately $11,500 over a period of about eight years for assisting in the acquisition of a property which was bought for $28,000 and apparently was worth no more than that. But these circumstances are of no great importance in view of the fact that whatever charges were proper, whether great or small, were capital expenditures and not deductible as ordinary and necessary expenses. The petitioner would put some emphasis on the alleged fact that a deduction for a similar payment had been allowed in a previous year or years. It does not plead any estoppel and none has been shown. The fact that the Commissioner previously computed the tax on an erroneous basis does not estop him from computing the tax on the same items correctly in later years. ; , certiorari denied, ; , affirmed, . The petitioner's position on the second issue apparently *68 is that on July 28, 1939, when it entered into the new lease with Woolworth, it "abandoned the building as of March 25, 1942 because its economic usefulness would terminate on the latter date" and "was required - by respondent's regulations - to accelerate the rate of depreciation so that the remaining 1939 cost would be completely absorbed by March 25, 1942." The regulations and cases which the petitioner cite do not support the petitioner's contention. Section 19.23(1)-6 of Regulations 103, which was in effect during the years 1939 and 1940, was in part as follows. No deduction for obsolescence will be permitted merely because, in the opinion of a taxpayer, the property may become obsolete at some later date. This allowance will be confined to such portion of the property on which obsolescence is definitely shown to be sustained and cannot be held applicable to an entire property unless all portions thereof are affected by the conditions to which obsolescence is found to be due. There is no evidence here to show knowledge in 1939 or in 1940 that the building would become obsolete in 1942. The deductions computed without regard to obsolescence were on the basis of a physical *69 life extending far beyond 1942, and there is no evidence to show that they were incorrectly computed. There is no evidence to show that any period of obsolescence was in progress in 1939 or 1940. Woolworth could have used the old building for an indefinite period or could have destroyed the building and replaced it at any time. Actually it chose to replace it with a new one in 1941. It has been held repeatedly under similar circumstances that the unrecovered cost of an old building becomes a part of the cost of acquiring the new lease. This is the rule even though demolition of the building at a specific time is known and has been agreed upon. ; ; , affirmed , certiorari denied, ; affirmed , certiorari denied, ; ; , affirmed . The petitioner argues *70 that the lessee was not required to rebuild if it demolished the building. While we doubt that this is a proper interpretation of the lease, nevertheless, it would not make any difference in the decision of this case because the unrecovered part of the cost of the building would still be the cost of the lease, and the cases cited above would be applicable. Decision will be entered for the respondent.